IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZimVie Inc. and Zimmer Biomet Spine, Inc.<br><br>Plaintiffs,<br><br>**-against-**<br><br>Medtronic Inc., Medtronic USA Inc., Biomet New York, Inc., Brian Cosgrove, and David Zuklie,<br><br>Defendants. | Case No. 23-cv-3622<br><br>**SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>Jury Trial:   ☒ Yes   ☐ No |

## <u>INTRODUCTION</u>

1.     ZimVie Inc. and Zimmer Biomet Spine, Inc. (collectively referred to herein as "ZimVie") bring this action for damages and to enjoin Biomet New York, Inc. ("ZBNY") and its principals Brian Cosgrove and David Zuklie (collectively referred to herein as the "ZBNY Defendants") from continuing to violate non-compete and non-solicitation provisions of a March 2023 Termination Agreement and original Sales Representation Agreement between ZBNY Defendants and ZimVie, and from continuing to misappropriate ZimVie's trade secrets and customer information and goodwill.

2.     ZimVie also seeks an injunction and damages against Medtronic Inc. and Medtronic USA Inc. (collectively referred to herein as "Medtronic") for its deliberate acts to procure the ZBNY Defendants' breaches of their contractual obligations with ZimVie and its scheme to unfairly compete with ZimVie in the spinal surgery products market.

3.     The Termination Agreement and the parties' prior agreement specifically prohibits the ZBNY Defendants from marketing products that compete with the products they previously sold for ZimVie.  The ZBNY Defendants are continuing to breach their non-compete obligations by actively marketing Medtronic's competing products—including to the very same physicians to

950000_1603-1154861692-31928/0.0

which they previously sold ZimVie's products.

4.      The Termination Agreement also specifically prohibits the ZBNY Defendants from inducing ZimVie sales personnel to leave ZimVie or to work for any competitor of ZimVie.  Each of the ZBNY Defendants has done exactly that, including by inducing key ZBNY sales personnel Aaron Mensah, Mark Robbins, Matt Nardone, and Gary Peysakhovich to terminate their relationships with ZimVie and instead work for Medtronic.

5.      Indeed, it appears that the ZBNY Defendants began breaching their exclusivity obligations to ZimVie even before the Termination Agreement was signed—unlawfully selling competing products and inducing ZimVie sales personnel to leave ZimVie even while under exclusive contract with ZimVie.  The ZBNY Defendants nonetheless induced ZimVie to sign the termination agreement, despite already planning to sign on with Medtronic.  And, it appears that Medtronic actively supported and even encouraged the ZBNY Defendants in that conduct as part of a nationwide conspiracy to unfairly compete in the spinal surgery products market.

6.      Medtronic is fully aware of the ZBNY Defendants' contractual obligations to ZimVie and has knowingly induced the breach of those obligations.

7.      Medtronic, a direct competitor to ZimVie, traditionally has sold its spinal surgery products predominantly through its own employees.  However, to make "significant cost reductions" in the face of "inconsistent" financial results, Medtronic recently has worked to restructure its sales force and engage third-party sales representatives, copying the model that ZimVie uses.

8.      But, instead of building up a network of third-party sales representatives the right way by fairly competing in the marketplace, Medtronic instead devised a scheme whereby it unlawfully interfered with ZimVie's existing contracts with its sales representatives in at least two

markets nationwide.  Medtronic has effectively aimed to dismantle ZimVie's third-party sales representative relationships and acquire them for its own.

9.      Since terminating their relationship with ZimVie and joining Medtronic, the ZBNY Defendants have now also converted several of ZBNY's individual sales representatives to work for Medtronic, despite each of these individuals also being bound by non-competes that prohibit them from competing with ZimVie in their territories for a year after the termination of the ZBNY/ZimVie relationship.  Following the termination of ZBNY's agreement with ZimVie, David Zuklie has successfully converted at least four individual sales representatives to Medtronic, one of whom reported that Medtronic offered a whopping $700,000 guarantee for a two-year term to make the switch.

10.      Medtronic's scheme includes not only unlawfully interfering with ZimVie's contracts with its sales representatives, but also stealing ZimVie's proprietary information and poaching longstanding ZimVie customers.  Medtronic's newly acquired salesforce has now, in coordination with ZBNY principal Brian Cosgrove, set to work on flipping their surgeon customers from ZimVie to Medtronic, in plain violation of their non-competes.  ZBNY operates in a key market, the Tri-State Area of New York, New Jersey, and Connecticut, a territory that includes some of the most famous spinal surgeons in the country, many of whom are current customers for ZimVie products, but who have relationships with ZimVie's third-party sales representative, ZBNY.  The ZBNY Defendants are now working to leverage those relationships for Medtronic.

11.      For instance, one key surgeon customer, a ZimVie "design surgeon" who is directly involved in ZimVie's product development and research, has reported multiple calls from Brian Cosgrove requesting a dinner to discuss Medtronic, which the surgeon has repeatedly declined.

Other physicians in the territory, however, have made the switch in response to Mr. Cosgrove and his affiliates' solicitation, and have advised ZimVie they will now be using Medtronic products.

12.     These sales representatives' courting of doctors has been overt and aggressive. ZimVie sales representatives have repeatedly seen former ZBNY sales representatives who now work for Medtronic signing in on logbooks for hospitals within their former ZimVie territory.  For instance, as recently as on May 4, 2023, one of the former ZBNY sales representatives covered a case for a New York University surgeon that had been scheduled to use a ZimVie product called MaxAn, an anterior cervical plate inserted in the spinal column.  A ZimVie representative was at the facility, prepared to cover the case, but the former ZBNY sales rep told the ZimVie rep that the doctor would be using Medtronic instead.  The surgeon then decided mid-surgery that he did not like the Medtronic product and wanted to use his originally requested ZimVie plate.  Instead of contacting the ZimVie rep waiting just outside the surgical room, Matt Nardone, the former ZNBY rep continued to cover the surgery by using the ZimVie plate, a product he is no longer contractually allowed to handle.  Other doctors have reported an understanding that former ZBNY sales representatives have left ZimVie but are still "allowed to carry ZimVie," and represent both products, a false statement that allows these representatives to continue to court their former customers on behalf of Medtronic.

13.     Medtronic's aim in pursing these customers is clear – it desires to not only improve its already outsized market position, but it also aims to harm ZimVie.  Medtronic holds roughly 22.9% of the global market share for spinal surgery products, while the other roughly 250 companies operating in this space share the remaining 77.1% of market share.  Seeking to maintain its dominance in the face of financial turbulence, Medtronic has now resorted to unlawful means to hoard its market share and push other players out of this space.

## PARTIES

14.     Plaintiff ZimVie is a Delaware corporation with its principal place of business at 10225 Westmoor Drive, Westminster, Colorado 80021.  ZimVie is in the business of designing, developing, and commercializing medical devices that enable surgeons to treat patients with spinal and musculoskeletal disorders.  ZimVie markets and sells its medical devices to surgeons and hospitals worldwide, with a significant amount of its revenue coming from sales in the United States.  ZimVie has several wholly-owned subsidiaries, including Zimmer Biomet Spine, Inc.

15.     Plaintiff Zimmer Biomet Spine, Inc., is a Delaware corporation with its principal place of business at 10225 Westmoor Drive, Westminster, Colorado 80021.  ZimVie and Zimmer Biomet Spine, Inc. are collectively referred to herein as "ZimVie."

16.     Defendant Medtronic Inc. is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.

17.     Defendant Medtronic USA Inc. is a wholly-owned subsidiary of Medtronic Inc., and is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.  Defendants Medtronic, Inc. and Medtronic USA Inc. are collectively referred to herein as "Medtronic."

18.     Medtronic is the largest medical device company in the world and is in the business of manufacturing and selling a variety of medical device products, including spinal and musculoskeletal products.  Medtronic markets and sells its medical devices worldwide, as well as to doctors and hospitals across the United States.  Medtronic is a direct competitor to ZimVie.  Medtronic's spinal and musculoskeletal products compete with ZimVie's spinal and musculoskeletal products, and Medtronic and ZimVie compete in the same United States markets for the same customers and sales representatives.

19.     Defendant Biomet New York, Inc. is a New York corporation with its principal place of business at 200 Robbins Lane, Suite D-3, Jericho, New York 11753.  Defendant Biomet New York, Inc., is referred to herein as "ZBNY."

20.     Defendant Brian Cosgrove is a principal of ZBNY and a former third-party sales representative for ZimVie.  He resides in Pleasantville, New York.

21.     Defendant David Zuklie is a principal of ZBNY and a former third-party sales representative for ZimVie.  Per his own admission to a ZimVie representative, Mr. Zuklie is currently employed as a full-time consultant for Medtronic.  Mr. Zuklie resides in Lloyd Harbor, New York.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states and the amount in controversy exceeds $75,000.  In particular, the financial harm to ZimVie if the Defendants are allowed to violate (and induce violations of) their Termination Agreement with impunity well exceeds $75,000.  This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this case involves a claim against Defendants for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836.

23.     This Court has personal jurisdiction over the ZBNY Defendants because they consented to this Court's jurisdiction and reside in this jurisdiction.  This Court has personal jurisdiction over Medtronic because it has and continues to engage in tortious acts that have caused harm in this jurisdiction.

24.     Specifically, Biomet New York, Inc. ("ZBNY") and ZBNY's principals Brian Cosgrove and David Zuklie are parties to a Confidential Termination and Transition Agreement

("Termination Agreement") with Zimmer Biomet Spine, Inc. dated March 28, 2023.  A true and correct copy of the Termination Agreement is attached hereto as **Exhibit A**.

25.     Paragraph (8)(b) of the Termination Agreement states, in relevant part, that the parties ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

26.     The ZBNY Defendants' Independent Sales Representative Agreement ("SRA") with ZimVie was originally signed on January 1, 2014.  A true and correct copy of the original SRA is attached hereto as **Exhibit B**.  The SRA was amended several times, including an amendment dated October 7, 2015.  A true and correct copy of the SRA, as amended on October 7, 2015, is attached hereto as **Exhibit C**.  The original Sales Representative Agreement and its amendments will be referred to collectively as "the SRA."

27.     Article XVII of the SRA provides that ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

28.     As such, this Court has personal jurisdiction over the ZBNY Defendants in this action because: (1) they have caused damage within the state of New York, (2) they consented to the jurisdiction of the federal court in Nassau County, New York, and (3) they reside in New York.

29.     This Court has personal jurisdiction over Defendant Medtronic because, among

other reasons, it has caused damage within the state of New York, it is registered to do business in New York, it regularly transacts business in New York, it employs individuals in New York, and it was reasonably foreseeable that Medtronic would be bound by the Termination Agreement and SRA's forum selection clause when it induced the ZBNY Defendants to breach their agreements with ZimVie.

30.     Venue is proper in this district because a substantial part of the damages giving rise to this dispute occurred within this district, and the ZBNY Defendants have agreed that this Court is the appropriate venue for disputes arising out of their Termination Agreement and SRA.[1] *See* 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### A.     ZimVie's Business Model and Development of Customer Relationships

31.     ZimVie is a medical device company that specializes in products that assist surgeons in treating spinal and musculoskeletal disorders.  In particular, ZimVie specializes in spinal surgery products, including cervical plates, percutaneous screws, and vertebral tethering.

32.     ZimVie sells its products through third-party sales representatives who contract with ZimVie for the right to sell ZimVie products within specific geographic areas and/or to specific hospitals and surgeons ("territory").  ZimVie has created the largest third-party sales representative network for spinal surgery products in the country.

---

[1] ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
ZimVie instituted a parallel arbitration proceeding against the ZBNY Defendants for damages arising from these violations on May 27, 2023, pursuant to the arbitration clause contained in the Sales Representation Agreement and incorporated by reference in the Termination Agreement. However, on August 9, 2023 the Parties agreed to consolidate the arbitration proceeding into this case, and as such ZimVie also seeks damages against ZBNY Defendants in this matter.

33.     These third-party sales representatives then employ (either as employees or contractors) sales personnel who work for them and who are also granted to the right to sell ZimVie products within the sales representative's territory.  These sales representatives, in exchange for the exclusive right to sell ZimVie's products within their territory, agree to exclusively sell ZimVie's products.  Put differently, they agree to not sell any other company's products while they are under contract with ZimVie and for a one-year period after their contract with ZimVie ends.  There are sometimes exceptions to the exclusivity provision of their agreements, but those exceptions are granted only in very rare circumstances.

34.     In general, a sales representative's duties include providing support for hospitals and surgeons, being present in the operating room as technical support for ZimVie's products for hospital personnel, ensuring that the products get to the hospital in advance of scheduled surgeries, and ensuring that the products and instrumentation needed for the surgery are prepped and ready to use.

35.     ZimVie grants sales representatives the exclusive right to sell ZimVie products in certain territories.  This ensures that ZimVie's sales representatives are not competing against other ZimVie sales representatives.  This also means that ZimVie's sales representatives represent the sole ZimVie sales presence in a given area or for a given surgeon, and in turn these sales representatives possess critical proprietary information about ZimVie's customers that, if shared with a competitor of ZimVie, would be detrimental to ZimVie.  Sales representatives receive compensation based on ZimVie sales that take place in their geographic area and/or from their assigned hospitals and surgeons.

36.     The spinal surgery products market is highly competitive, with approximately 250 companies, including ZimVie and Medtronic, competing to sell their products to the limited

number of customers who purchase or use those products.  Despite the crowded market, Medtronic holds 22.9% of the total market share.  The other roughly 250 companies operating in the space share the remaining 77.1% of market share, with ZimVie holding roughly 3% of the market share.

37.     In addition to being a highly competitive market, the spinal surgery product market relies almost entirely on the customers' trust in the company that creates and sells them the product. Customers—hospitals and surgeons—rely on ZimVie's sales representatives to ensure that the proper products, devices, and instrumentation are prepared and ready to use prior to a surgery. They also rely on ZimVie's sales representatives to provide technical support during surgery if requested.  As a result, customers in the spinal surgery product market generally will only commit to purchasing a product from a company and sales representative with whom they are familiar and have developed a sufficient level of trust.

38.     To establish this trust, it is critical that ZimVie's sales representatives build and maintain relationships with current and prospective ZimVie customers, including hospitals, surgeons, and their staff.  As a result, ZimVie's sales representatives, such as the ZBNY Defendants, routinely interact with ZimVie customers and prospective customers.

39.     ZimVie invests heavily in its sales representatives, providing training regarding sales strategies, product offerings, and relationship building techniques.  ZimVie also assigns these representatives to specific territories and customers so that the representatives can build and maintain strong relationships within those territories.

40.     ZimVie also gives its sales representatives access to ZimVie's confidential information regarding customer preferences, customer pricing, products, marketing pipelines, sales pipelines, and other information not generally known to the public related to ZimVie's business.  ZimVie's sales representatives also develop an extensive familiarity with the practices

and preferences of their physician customers, including understanding what product features they need and prefer, and how they care for their patients during surgical procedures.  By being in the room with these physicians during procedures over several years, these sales representatives gain critical information about their customer targets and how to better cater to their needs.  This information is not publicly known or available, but can be easily exploited by a competitor to poach the physician target.

41.    To protect ZimVie's substantial investment in its sales representatives and its customer relationships that ZimVie grows and maintains through its sales representatives, and to protect against the improper use or disclosure of this critical confidential information regarding customers and ZimVie's products and trainings, ZimVie requires all sales representatives to sign sales representative agreements ("SRAs") at the time of hiring and as a condition of their contract with ZimVie.  The SRAs carry a few reasonable restrictions.

42.    Among other things, ZimVie's SRAs prohibit sales representatives from working for or otherwise selling the products of a competing company during the term of the contract.  In addition, sales representatives agree that for a period of one year after they end their relationship with ZimVie, they cannot, in the territory in which they sold ZimVie products, (a) work for or otherwise assist any competing company; (b) enter into any compensation arrangement or similar transaction with a competing company to work in the representative's sales territory; (c) solicit any other ZimVie sales representative to terminate their relationship with ZimVie; (d) solicit or assist others in soliciting or hiring a former sales representative who is within their one year non-compete term; and (e) solicit any customer served or solicited by the sales representative or any of their personnel during the 18 month time period preceding termination of the SRA.  *See, e.g.*, **Exhibit B** at Article XIII.

43.     The SRAs also prohibit the improper use or disclosure of ZimVie confidential information at any time during or after the sales representatives' relationship with ZimVie until such time as the confidential information has become known to the general public.  *See, e.g.*, **Exhibit B** at Article XII.

44.     The SRAs are designed to ensure that ZimVie's sales representatives cannot leverage ZimVie's customer goodwill, confidential information, and the customer relationships that the sales representatives had access to and developed by virtue of their exclusive ZimVie sales contracts to compete unfairly and use for their own benefit and the benefit of a future employer.

45.     In addition to maintaining contracts with sales representatives, ZimVie contracts with specific "design surgeons" who help to develop and provide feedback on ZimVie's products, and who are therefore critical to product development and innovation.  As a result, these surgeons possess proprietary information regarding ZimVie's products and other confidential information regarding ZimVie's business.  Design surgeons are often customers of ZimVie and work closely with sales representatives in their territory.

**B.     The ZBNY Defendants' Contract with ZimVie**

46.     The ZBNY Defendants signed an SRA with Zimmer Biomet Spine, Inc.—a wholly-owned ZimVie, Inc. subsidiary—that became effective January 1, 2014 ("ZBNY SRA").

47.     For the nine-year period of January 1, 2014, through March 28, 2023, the ZBNY Defendants operated as ZimVie sales representatives with the exclusive right to distribute ZimVie products within a defined geographic territory located within New York, New Jersey, and Connecticut, as well as to certain customer accounts.[2]  As of the last amendment to the ZBNY

---

[2] The ZBNY Defendants entered into the ZBNY SRA in 2014; however, their principles been operating in the territory and selling similar products for ZimVie's legacy parent companies for many years previously.

SRA in November 2021, the ZBNY Defendants' territory included identified counties in New York, New Jersey, and Connecticut, as well as particular surgeons identified in the amendment, and excluding certain other surgeons also identified therein.

48.     The ZBNY Defendants' SRA featured all of ZimVie's standard confidentiality, non-compete, and non-solicitation terms for sales representatives. **Exhibit B.** The SRA was amended throughout the years, largely to accommodate territory or compensation adjustments, but the confidentiality, non-compete, and non-solicitation terms of the original SRA remained in effect during the totality of the ZBNY Defendants' relationship with ZimVie.

49.     The ZBNY SRA defines "Confidential Information" to include any "non-public information that [ZimVie] designates as being confidential or secret or which, under the circumstances surrounding the disclosure, ought to be treated as confidential," and includes expressly "lists and other information relating to customers (including, without limitation, prescribing habits and product preferences), [and] prospective customers . . ." **Exhibit B** at 1.

50.     Article XII of the SRA governs confidential information, and provides in relevant part:





51.     Article XIII governs non-competition and non-solicitation, and provides in relevant part:

███████████████████████████████████████████
██████████████████████████

52.     The ZBNY SRA also provided that, should the ZBNY Defendants breach their covenants not to solicit or compete, or their confidentiality obligations, ZimVie is ████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

53.     In addition to Brian Cosgrove and David Zuklie operating as the principals of ZBNY with the rights to distribute ZimVie products, ZBNY employed additional individual sales personnel to sell ZimVie products as contemplated under the SRA.  The ZBNY sales personnel were similarly required to sign non-compete and non-solicitation agreements with ZimVie, in a form provided by the company.  *See* Exhibit B. at Schedule 13.08 (Form Non-Compete & Non-Solicit Agreement for Representative's Personnel).

54.     In the Non-Compete and Non-Solicit Agreements, the ZBNY sales personnel also had to agree that they would receive confidential ZimVie information, and recognized that they would, during their engagement with ZBNY, ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

55.     Individual sales representatives working for ZBNY representing ZimVie and its

products also had to agree that during the term of their engagement with ZBNY and for one year after, they would not:



Exhibit B at Schedule 13.08 § 2.

56.     Individual sales representatives working for ZBNY representing ZimVie and its products also had to agree to a non-solicit and no-hire covenant which required:



*Id.* § 3.

### C.     **ZimVie's Termination of the ZBNY Defendants' Contract**

57.     The ZBNY Defendants had, for many years, operated as a successful and productive sales team for ZimVie. Their performance, however, declined in recent years, with

ZBNY ranking as the third poorest performing sales team at ZimVie in 2022 despite operating in the most important sales territory in the country.  Upon information and belief, ZBNY's poor performance for ZimVie was due to its simultaneously selling competing products for competing companies in direct violation of its SRA.  Because the ZBNY Defendants were promoting competing products, they were in turn selling fewer ZimVie products.

58.     Upon information and belief, the ZBNY Defendants also instructed their sales personnel to similarly sell competing products while they were under non-competes with ZimVie.

59.     While under the SRA, the ZBNY Defendants also purchased or otherwise became the owners of Tri-State Medical Sales, Inc.  Upon information and belief, the ZBNY Defendants utilized the Tri-State Medical Sales, Inc. entity to enter into or otherwise circumvent the SRA with ZimVie by acquiring other spinal surgery product market contracts.

60.     This downward trend in work for ZimVie culminated in a request from ZBNY to end its relationship with ZimVie early, a request made in concert with another ZimVie sales representative located in Ohio named John Scott.  Brian Cosgrove has long had a close relationship with the Ohio representative John Scott, as they were key sales representatives for ZimVie's legacy parent company, Biomet.

61.     Multiple times over the years, John Scott in Ohio and Mr. Cosgrove in New York reached out to ZimVie demanding increased compensation and threatening to leave.  When ZimVie informed them that it would not comply with their demands, both did leave, and upon information and belief, both went to Medtronic.

62.     On December 20, 2022, the ZBNY Defendants and John Scott contacted Ricardo Vita, ZimVie's Vice President and General Manager of the Americas, and requested that they find a time to speak in the next few days.  On December 21, 2022, the ZBNY Defendants requested an

early termination of their SRA on a call with Mr. Vita.  The next day, on December 22, 2022, John Scott similarly requested to get out of his ZimVie SRA early.

63.     ZimVie granted the group's request and began the process of drafting and entering into early termination agreements with both the ZBNY Defendants and Mr. Scott.  These agreements allowed for the early exit of these sales representatives from their relationships with ZimVie, but kept intact these parties' non-compete and non-solicit obligations for one year following their terminations in their former territories, as well as their obligations to maintain ZimVie's confidential information.

64.     In the negotiations surrounding the early termination of the ZBNY SRA, David Zuklie  and Brian Cosgrove represented to ZimVie that they would sit out for a year, and not violate their non-competes.  In reality, upon information and belief, during the negotiations of the Termination Agreement, Zuklie and Cosgrove had already received offers for employment from Medtronic, and had already began working on Medtronic's behalf to convert ZimVie accounts when they negotiated their early termination.  Nonetheless Zuklie and Cosgrove did not disclose their relationship with Medtronic when seeking early termination, nor did they disclose that they had already been communicating with their customer accounts about converting from ZimVie to Medtronic.  Mr. Zuklie and Mr. Cosgrove did not disclose this information to ZimVie because they knew that ZimVie would never agree to let them out of the ZBNY SRA early if it knew that they were signing up with Medtronic.  ZimVie justifiably relied on Mr. Zuklie and Mr. Cosgrove's material omission of their deal with Medtronic when entering into the Termination Agreement.

65.     ZimVie and the ZBNY Defendants thus entered into the Early Termination and Transition Agreement ("Termination Agreement") on March 28, 2023, with the agreement to take effect on April 30, 2023.  **Exhibit A.**  The Termination Agreement provided, in relevant part:



66.     Brian Cosgrove and David Zuklie signed the Termination Agreement on behalf of ZBNY and in their individual capacities.

**D.      ZimVie Sends Letter to Medtronic Reminding it of its Legal Obligations**

67.     Soon after the ZBNY Defendants signed the Termination Agreement, ZimVie began to hear that the former ZimVie sales representatives were breaching their post-termination obligations.   Because Medtronic's name was connected to many of the reported breaches, ZimVie's outside counsel sent a letter to Medtronic on April 14, 2023, regarding the rights owed to ZimVie by certain representatives. **Exhibit D**.

68.     The April 14, 2023 letter informed Medtronic that ZimVie had reason to suspect that Medtronic is interfering "with contractual obligations owed to ZimVie by its independent sales representatives ("Representatives") along with the affiliated sales personnel engaged by those Representatives to market and sell ZimVie products."

69.     In the letter, ZimVie further explained to Medtronic the specifics of its contractual relationships with the ZBNY Defendants—including the non-compete and non-solicitation obligations that the ZBNY Defendants and their sales personnel owe to ZimVie post-termination.

70.     The letter also stated that ZimVie understood that Medtronic "has or is currently seeking to engage certain Representatives to sell Medtronic products in violation of their contractual obligations owed to ZimVie."

71.     In addition to outlining ZimVie's contractual relationship with the ZBNY Defendants, the letter explained ZimVie's contractual relationship with Mr. John Scott.  Mr. Scott is the Ohio-based ZimVie sales representative who requested to terminate his ZimVie relationship early in concert with the ZBNY Defendants.  Mr. Scott now works for Medtronic in violation of his termination agreement.

72.     ZimVie requested a response to its letter by April 24, 2023.

73.     Medtronic responded to ZimVie's letter on April 24, 2023, through Principal Legal Counsel Rebecca Goldstein.  Medtronic's response did not deny that it had engaged the former ZimVie sales representatives, but instead stated that ZimVie's former sales representatives "have been or will be instructed by Medtronic to abide by their contractual obligations to ZimVie as set forth in their respective agreements."  **Exhibit E**.

E.      **The ZBNY Defendants' Conduct After Signing the Termination Agreement**

74.     Almost immediately after the ZBNY Defendants signed the Termination

Agreement, and despite ZimVie's letter to the ZBNY Defendants' new employer advising Medtronic of their contractual obligations, ZimVie began to receive word that the ZBNY Defendants were breaching the Termination Agreements' restrictions.

75.     Upon information and belief, after the Termination Agreement was signed (and likely even before it was signed) David Zuklie began soliciting ZBNY sales personnel to come to Medtronic and Brian Cosgrove in turn began to pursue ZBNY customers and design surgeons to also make the switch.

76.     As for Mr. Zuklie's campaign to bring his ZBNY salesforce over to Medtronic, ZimVie has learned of Mr. Zuklie's efforts directly from sales representatives who Mr. Zuklie has contacted in order to lure them to Medtronic.  Shortly after the ZBNY Defendants signed the Termination Agreement on March 28, 2023, ZimVie's Ricardo Vita and Katie Manchin, VP of U.S. Sales for ZimVie, traveled to New York in early April 2023 to meet with the ZBNY Defendants to finalize the transition of ZBNY sales personnel to ZimVie as contemplated in the Termination Agreement. Ultimately, fourteen ZBNY sales personnel signed on to continue selling with ZimVie.

77.     At least one of the ZBNY sales personnel who chose to continue working with ZimVie reported repeated contact from David Zuklie and his brother Mark Zuklie (also a ZBNY employee) wherein they tried to convince the rep to come and sell Medtronic products instead.

78.     Four ZBNY sales personnel, who were often referred to as the "Core Four" by sales personnel at ZBNY and who reported directly to Davie Zuklie and Brian Cosgrove at ZBNY, decided to resign from their relationship with ZimVie.  All of these individuals called ZimVie to report their resignation from ZimVie the same day, each repeating the same scripted phrases, including "I want you to know that when I met with you," referring to Ms. Manchin "and Ricardo,

-21-

it wasn't just fluff."

79.     One of these individuals, Aaron Mensah, informed Ms. Manchin that Medtronic had offered him and other ZBNY sales personnel a large guarantee of $700,000 to sign a two-year contract with Medtronic.  Another of the Core Four, Gary Peysakhovich, informed Mr. Vita that "it's going to be really hard for you to match what Medtronic put in front of me."  Upon information and belief, Medtronic had made this offer to Gary Peysakhovich and the other ZBNY sales personnel in early March 2023, well before the Termination Agreement had been signed. Upon information and belief, Medtronic knew that these sales personnel were under contract, including restrictive covenants, with ZimVie at the time of extending these extraordinary offers.

80.     Mr. Zuklie's efforts to recruit ZBNY sales personnel subject to non-competes with ZimVie to sell for Medtronic is a direct breach of the ZBNY Defendants' agreement to (i) not solicit ZimVie sales representatives to terminate their contracts with ZimVie during the one-year period post-termination and (ii) not work for or otherwise assist any competing company during the one-year period termination.

81.     Brian Cosgrove, in turn, focused his efforts on leveraging these sales personnel to solicit ZimVie's customers to also make the switch to using Medtronic products.  This is a direct breach of the ZBNY Defendants' agreement to (i) for one year post-termination, not solicit any customer served or solicited by the sales representative or any of their personnel during the 18-month period of time leading up to termination and (ii) for one year post-termination, not work for or otherwise assist any competing company.

82.     ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████     Several of the customers that Brian

Cosgrove solicited are also "design surgeons" who work under contractual arrangements with ZimVie to test and develop ZimVie products. These design surgeons represent an incredibly valuable potential asset to Medtronic—in addition to being lucrative clients, they possess proprietary information about ZimVie's product development, research efforts, and business practices.

83.     The Core Four, after resigning from ZimVie, began immediately marketing and selling Medtronic products to ZimVie's surgeon customers. ZimVie sales representatives have repeatedly seen former ZBNY sales representatives who now represent Medtronic signing in on log books for the hospitals in their former territory. These individuals are, no doubt, courting their former customers in violation of their non-competes.

84.     For example, upon information and belief:

a.     ████████████████████████████████████████████████████████
████████████████████████████████ Two other physicians in the territory, however, have made the switch and have advised ZimVie they will now be using Medtronic products.

b.     ZimVie learned from a surgeon that one of the Core Four, Aaron Mensah, informed the surgeon that he and Brian Cosgrove were working with Medtronic now and attempted to flip the doctor to use Medtronic instead of ZimVie.

c.     A ZimVie sales representative witnessed Matt Nardone bring ZimVie product into an operating room for use in a surgery, despite no longer having the legal right to handle that product.

d.     Mr. Mensah was also seen at Hospital for Special Surgery, one of the facilities in ZBNY's ZimVie territory, by one of ZimVie's sales representatives covering the

New Jersey area as recently as May 3, 2023, using Medtronic product during a case.

     e.     In the week after leaving his contract with ZimVie, one of the Core Four has already flipped a surgeon at New York University Langone Health from using ZimVie's product to Medtronic's product. ZimVie learned this in an email from the surgeon's office.

85.     In addition to the ZBNY Defendants and the Core Four, other ZBNY employees are engaging in prohibited conduct to the benefit of Medtronic. A surgeon at Mercy Hospital in New York advised ZimVie that a former ZBNY sales representative, Austin Buri, who worked closely with David Zuklie, told the surgeon that he would be using Medtronic for his next case.

86.     ██████████████████████████████

██████████████████████████████

██████████████████████████████

87.     Within only one month after the Termination Agreement was signed, ZimVie has already noticed customer and revenue trends that suggest that additional customers are switching from ZimVie products to another spinal surgery product company's products. Upon information and belief, they are switching to Medtronic due to Brian Cosgrove and David Zuklie's breaches of their restrictive covenants.

88.     ZimVie has also received multiple phone calls or otherwise spoken in person with surgeon customers who expressed confusion or frustration regarding their access to ZimVie products and the former ZimVie sales representatives' statements to the surgeons. ████████

██████████████████████████████

89.     The ZBNY Defendants have executed and continue to execute on their scheme to leave ZimVie, join Medtronic, and flip ZimVie sales representatives, customers, and design

surgeons to Medtronic.

    **F.**    **Medtronic's Conspiracy with the ZBNY Defendants to Unlawfully Flip ZimVie Sales Representatives and Customers to Medtronic**

90.    Despite ZimVie sending the April 14, 2023, letter to Medtronic demanding that Medtronic cease any interference with contractual obligations owed to ZimVie by its individual sales representatives, ZimVie has continued to learn of violative conduct by the ZBNY Defendants that indicate Medtronic's involvement in a larger scheme to flip ZimVie sales representatives and customers Medtronic through unlawful means.

91.    Since the April 14, 2023, letter was sent, the Core Four stopped representing ZimVie and have become Medtronic employees.  ZimVie learned from a member of the Core Four that Medtronic offered him extraordinary compensation—$700,000 for a two-year contract—to become a Medtronic sales representative, in blatant breach of his non-compete.  Upon information and belief, these Medtronic offers were extended to the sales personnel in early March 2023, and were accepted after ZimVie sent the April 14, 2023 letter.

92.    Medtronic's interference with ZimVie's business extends to ZimVie's customer relationships as well.  ZimVie recently learned from a sales representative that Mr. Cosgrove attempted to flip a ZimVie surgeon customer to become a Medtronic customer by offering him a deal on Medtronic products.

93.    Upon information and belief, Medtronic is engaging in this violative recruiting behavior in New York and nationwide, including by knowingly recruiting current and former ZimVie sales representatives who are still subject to post-termination obligations.

94.    On Medtronic's February 2023 quarterly earnings conference call, Medtronic's CEO Geoff Martha announced that Medtronic was undertaking "significant cost reductions," and Medtronic has announced plans to lay off an undisclosed number of employees.

95.     Until recently, Medtronic sold its products directly through Medtronic employees. Upon information and belief, Medtronic has restructured its sales model to the third-party sales representative model that ZimVie uses in furtherance of its cost-cutting efforts.

96.     Upon information and belief, instead of building up a network of third-party sales representatives the right way by fairly competing for sales representatives in the marketplace, Medtronic has instead devised a scheme whereby it has unlawfully interfered with ZimVie's existing contracts with sales representatives in at least two markets nationwide.

97.     Upon information and belief, Medtronic is hiring former ZimVie sales representatives despite their contractual obligations to ZimVie for the purposes of leveraging (1) their customer relationships and proprietary knowledge regarding those customers and other potential customers and (2) their relationships with other ZimVie sales representatives whom they can try to convince to start selling Medtronic products.

98.     As it relates to the New York market, instead of fairly building a team of sales representatives to fairly compete against ZimVie and other spinal surgery product companies in the market, Medtronic decided it would be easier to steal ZimVie's team.  Medtronic accomplished this plan by inducing the ZBNY Defendants to violate their ZimVie contractual obligations, which in turn provided Medtronic with ZimVie's sales representatives, customer relationships, and confidential information for Medtronic's benefit and to the detriment of ZimVie.

99.     To execute this scheme, Medtronic first contacted the ZBNY Defendants who still worked for ZimVie and had critical relationships with other sales personnel working for ZimVie in the New York market, including the Core Four.

100.    The ZBNY Defendants sought early termination of their contract with ZimVie in December 2022 and entered into the Termination Agreement at the end of March 2023.

101.     Mr. Zuklie and Mr. Cosgrove have since entered into a contractual relationship with Medtronic.

102.     Upon information and belief, the ZBNY Defendants have pressured the Core Four and other ZBNY sales personnel to end their relationships with ZimVie and sell for Medtronic.

103.     Upon information and belief, Medtronic sweetened this deal for the ZBNY sales personnel by offering extraordinary compensation in the range of $700,000 for a two-year contract.

104.     At least five ZBNY sales personnel who sold for ZimVie at the time the Termination Agreement was signed now sell for Medtronic.

105.     Medtronic knew that the ZBNY Defendants and other ZBNY sales personnel held the key to something incredibly valuable: over a decades' worth of carefully cultivated client relationships, customer lists, and proprietary knowledge regarding the surgeons and hospitals in the lucrative New York, New Jersey, and Connecticut territory.  These relationships, customer lists, and valuable information were developed by the ZBNY Defendants and other ZBNY sales personnel by virtue of their role as ZimVie's exclusive sales team in the region.

106.     Medtronic's scheme is blatant.  Despite knowing about the contractual obligations owed by the ZBNY Defendants and ZBNY sales personnel to ZimVie, Medtronic induced a breach of those contractual obligations by contracting with the ZBNY Defendants and ZBNY sales personnel and permitted, if not encouraged, those individuals to turn around and solicit additional ZimVie sales representatives and customers in violation of their agreements with ZimVie.

107.     Medtronic's scheme has already caused damage to ZimVie.  At least three customer surgeons in the ZBNY Defendants' territory have informed ZimVie that they will be switching their business to Medtronic.  These accounts represent potentially millions of dollars in revenue for ZimVie.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(ZBNY, Cosgrove, and Zuklie)**

108.    Plaintiffs incorporate the preceding paragraphs as though fully set forth at length herein.

109.    ZimVie and ZBNY executed a valid, binding, and enforceable SRA and Termination Agreement.  **Exhibits A and B.**

110.    ZimVie and Brian Cosgrove executed a valid, binding, and enforceable SRA and Termination Agreement.  **Exhibits A and B.**

111.    ZimVie and David Zuklie executed a valid, binding, and enforceable SRA and Termination Agreement.  **Exhibits A and B.**

112.    The ZBNY Defendants entered into the SRA voluntarily and in valuable and adequate consideration for their exclusive right to sell ZimVie's products.

113.    The ZBNY Defendants entered into the Termination Agreement voluntarily and in valuable and adequate consideration for their right to extinguish many of their obligations to ZimVie.

114.    The restrictions set forth in the ZBNY Defendants' SRA and maintained in the Termination Agreement are necessary to protect ZimVie's legitimate business interests of protecting its goodwill and customer relationships and preventing disclosure or use of confidential customer information.

115.    The restrictions set forth in the ZBNY Defendants' SRA and maintained in the Termination Agreement are reasonable in time and geographic scope.

116.    In addition, the restrictions set forth in the ZBNY Defendants' SRA and maintained in the Termination Agreement are not unreasonably burdensome nor do they put undue burden on

the ZBNY Defendants, and they do not harm the general public.

117.    The ZBNY Defendants have violated their SRA by, among other things:

a.    Engaging in prohibited competition with ZimVie during the one-year period after termination;

b.    Soliciting sales representatives of ZimVie to instead sell for Medtronic during the one-year period after termination;

c.    Soliciting customers of ZimVie to purchase or use Medtronic's products during the one-year period after termination;

d.    Diverting ZimVie's business to Medtronic while under contractual obligations with ZimVie not to do so; and

e.    Using or otherwise disclosing ZimVie's confidential information regarding its customers.

118.    These violations have been, and are, knowing, willing, voluntary, and are intended to harm ZimVie's business.

119.    As a direct and proximate result of their conduct, ZimVie has suffered and continues to suffer damages and irreparable harm and injury, including but not limited to loss of customers, loss of goodwill, loss of profits, injury to its business reputation and market share, and damages associated with retaining other sales representatives and replacing sales representatives. ZimVie will continue to suffer such harm and injury if the ZBNY Defendants are not enjoined.

120.    The ZBNY Defendants will continue such wrongful action unless enjoined.

121.    ZimVie therefore requests that the Court:

a.    Enjoin the ZBNY Defendants from further violations of the SRA's non-compete, non-solicit, and confidentiality provisions as survived through the

-29-

Termination Agreement;

b.   Extend the ZBNY Defendants' restrictive covenants by the amount of time that they were in breach thereof;

c.   Award ZimVie damages arising from the ZBNY Defendants' conduct;

d.   Grant such other and further relief as this Court deems equitable, just, and appropriate.

**SECOND CAUSE OF ACTION**
**Tortious Interference with Contract**
**(Medtronic)**

122.   Plaintiffs incorporate the preceding paragraphs as though fully set forth at length herein.

123.   ZimVie has valid, binding, and enforceable agreements with the ZBNY Defendants. Medtronic is and has been aware of their contractual obligations arising from the SRA and Termination Agreement and, by the actions described above, has interfered with those contractual agreements by procuring the breach of those contractual obligations.

124.   Medtronic is without privilege or justification in its interference with the ZBNY Defendants' SRA and Termination Agreement obligations.

125.   This conduct has caused actual damage to ZimVie and was done intentionally and willfully with reckless indifference to ZimVie's rights.

126.   ZimVie therefore requests that the Court, with regard to Medtronic:

a.   Award damages against Defendant Medtronic in an amount to be proved at trial;

b.   Award punitive damages against Defendant Medtronic;

c.   Award ZimVie its costs and interest;

    d.    Enjoin Medtronic from interfering with ZimVie employment and termination contracts;

    e.    Grant such other and further relief as this Court deems equitable, just, and proper.

**THIRD CAUSE OF ACTION**
**Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836**
**(All Defendants)**

127.    Plaintiffs incorporate the preceding paragraphs as though fully set forth at length herein.

128.    Defendants' actions, as set forth more fully above, constitute misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

129.    ZimVie possessed information regarding ZimVie customers and more generally the New York, New Jersey, and Connecticut sales territory for spinal surgery products that is not readily ascertainable outside of ZimVie's business, which gave ZimVie an opportunity to obtain an advantage over competitors who did not know this information. ZimVie possesses and is the owner of valid trade secrets, which are used related to products or services used in, or intended for use in, interstate or foreign commerce, including, but not limited to, ZimVie sales and marketing information, organizational and sales employee information, advertising information, confidential pricing information, customer lists and preferences, marketing, sales techniques, unique training techniques, confidential customer information, territory sales plans, product technical information, performance management strategies, and business plans.

130.    As the use and disclosure of these trade secrets would unfairly benefit competitors, ZimVie have taken reasonable measures to keep its customer and territory information confidential, including by requiring employees, contractors, and third-party sales representatives

to sign confidentiality agreements as a condition of their contract.

131.    The ZBNY Defendants acquired this information solely by virtue of their contractual relationship with ZimVie, and are subject to the contractual provisions designed to protect the proprietary and confidential nature of these trade secrets.

132.    Medtronic acquired this information through improper means, including by inducing the ZBNY Defendants and other ZBNY sales representatives to breach their contracts with ZimVie.

133.    As more fully set forth in the paragraphs above, Defendants have used and disclosed, and will continue to use and disclose, ZimVie's trade secrets to unjustly benefit themselves and their businesses.

134.    Defendants engaged in this misappropriation knowing that it would injure and/or harm ZimVie.

135.    Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

136.    As a direct and proximate result of their conduct, ZimVie has suffered and continues to suffer damages and irreparable harm and injury, including but not limited to loss of customers, loss of goodwill, loss of profits, injury to its business reputation and market share, and damages associated with retaining other sales representatives and replacing sales representatives. ZimVie will continue to suffer such harm and injury if the ZBNY Defendants are not enjoined.

137.    The ZBNY Defendants will continue such wrongful action unless enjoined, and ZimVie will continue to suffer irreparable injury.

138.    ZimVie therefore requests that the Court:

    a.    Enjoin the ZBNY Defendants from further violations of the SRA's non-compete, non-solicit, and confidentiality provisions as survived through the

Termination Agreement;

b.    Extend the ZBNY Defendants' restrictive covenants by the amount of time that they were in breach thereof;

c.    Award compensatory damages and attorneys' fees against Defendants; and

d.    Grant such other and further relief as this Court deems equitable, just, and appropriate.

**FOURTH CAUSE OF ACTION**
**Misappropriation of Confidential Trade Secrets – New York law**
**(All Defendants)**

139.    Plaintiffs incorporate the preceding paragraphs as though fully set forth at length herein.

140.    Defendants' actions, as set forth herein, constitute misappropriation under New York law.

141.    ZimVie possessed information regarding ZimVie customers and more generally the New York, New Jersey, and Connecticut sales territory for spinal surgery products that is not readily ascertainable outside of ZimVie's business, which gave ZimVie an opportunity to obtain an advantage over competitors who did not know this information.  ZimVie possesses and is the owner of valid trade secrets, which are used related to products or services used in, or intended for use in, interstate or foreign commerce, including, but not limited to, ZimVie sales and marketing information, organizational and sales employee information, advertising information, confidential pricing information, customer lists and preferences, marketing, sales techniques, unique training techniques, confidential customer information, territory sales plans, product technical information, performance management strategies, and business plans.

142.    ZimVie has taken reasonable and appropriate measures under these circumstances

to maintain the confidentiality of its customer and territory information, including by requiring employees, contractors, and third-party sales representatives to sign confidentiality agreements as a condition of their contract.

143.   The ZBNY Defendants acquired this information and developed further trade secret information regarding ZimVie's clients and the sales territory solely by virtue of their contractual relationship with ZimVie.

144.   Medtronic has used improper means to discover this information, including by inducing the ZBNY Defendants and other ZBNY sales representatives to breach their contracts with ZimVie.

145.   Defendants have used and disclosed, and will continue to use and disclose, ZimVie's trade secrets to unjustly benefit themselves and their businesses.

146.   Defendants engaged in this misappropriation knowing it would injury and/or harm ZimVie.

147.   Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

148.   As a direct and proximate result of their conduct, ZimVie has suffered and continues to suffer damages and irreparable harm and injury, including but not limited to loss of customers, loss of goodwill, loss of profits, injury to its business reputation and market share, and damages associated with retaining other sales representatives and replacing sales representatives. ZimVie will continue to suffer such harm and injury if the ZBNY Defendants are not enjoined.

149.   The ZBNY Defendants will continue such wrongful action unless enjoined.

150.   ZimVie therefore requests that the Court:

      a.    Enjoin the ZBNY Defendants from further violations of the SRA's non-compete, non-solicit, and confidentiality provisions as survived through the

Termination Agreement;

b.    Extend the ZBNY Defendants' restrictive covenants by the amount of time that they were in breach thereof;

c.    Award ZimVie damages arising from the Defendants' conduct;

d.    Grant such other and further relief as this Court deems equitable, just, and appropriate.

**FIFTH CAUSE OF ACTION**
**Unfair Competition**
**(All Defendants)**

151.    Plaintiffs incorporate the preceding paragraphs as though fully set forth at length herein.

152.    By the acts described above, Defendants have engaged in unfair competition. They have used unlawful means to compete with and injure ZimVie by, among other things, using ZimVie's business relationships and goodwill for the benefit of Medtronic and to the detriment of ZimVie. The ZBNY Defendants engaged in these actions while under restrictive covenants with ZimVie. In sum, Defendants are reaping the rewards of ZimVie's substantial investment in time and money to develop its customer base, industry expertise, and goodwill.

153.    Their wrongful acts include:

a.    Improperly soliciting ZimVie sales representatives to leave ZimVie and join Medtronic;

b.    Improperly soliciting ZimVie customers to stop purchasing or using ZimVie products and to instead purchase or use Medtronic's products;

c.    Improperly transferring or utilizing ZimVie proprietary information regarding customers and the market that provided a competitive advantage;

and

    d.      Inducing the ZBNY Defendants to breach their contractual obligations to ZimVie.

154.    Defendants' conduct has caused actual harm to ZimVie and was done intentionally and without justifiable cause.

155.    As a result of Defendants' conduct, ZimVie has suffered and will continue to suffer substantial, immediate, and irreparable harm, as well as damages, unless Defendants are enjoined from their scheme of unlawful competition.

156.    ZimVie therefore requests that the Court:

    a.      Award damages against Defendants in an amount to be proved at trial;

    b.      Award punitive damages against Defendants;

    c.      Require disgorgement of all revenue earned by Medtronic and ZBNY Defendants as a result of its and the ZBNY Defendants' unlawful conduct;

    d.      Award ZimVie its costs and interest; and

    e.      Grant other and further relief as this Court deems equitable, just, and proper.

**SIXTH CAUSE OF ACTION**
**Civil Conspiracy to Accomplish Unfair Competition**
**(All Defendants)**

157.    Plaintiffs incorporate the preceding paragraphs as though fully set forth at length herein.

158.    By their acts described above, Defendants acted together with a common purpose to carry out their unlawful scheme to commit the tort of unfair competition, which includes breaches of the ZBNY Defendants contractual obligations to ZimVie, tortious interference with contract, and trade secret misappropriation, for the purpose of harming ZimVie and benefitting

Medtronic.

159.     Each Defendant intentionally, with knowledge of their conspiracy and with the intent to further the objectives of their conspiracy, committed an overt act in further of the agreement and in furtherance of their plan.

160.     As a result, ZimVie has suffered damages including but not limited to loss of customers, loss of goodwill, loss of profits, injury to its business reputation and market share, and damages associated with retaining other sales representatives and replacing sales representatives.

161.     ZimVie therefore requests that this Court:

    a.  Award damages against Defendants in an amount to be proved at trial;

    b.  Award punitive damages against Defendants;

    c.  Award ZimVie costs and interest; and

    d.  Grant such other and further relief as this Court deems equitable, just, and proper.

## SEVENTH CAUSE OF ACTION
### Tortious Interference with Prospective Business Relationship
### (All Defendants)

162.     Plaintiffs incorporate the preceding paragraphs as though fully set forth at length herein.

163.     Defendants knew that ZimVie planned to and in fact did offer the ZBNY sales personnel, including the Core Four, the opportunity to contract with ZimVie to continue selling ZimVie products after the New York Representatives terminated their contract with ZimVie.

164.     Defendants intentionally interfered with ZimVie's opportunity to sign the ZBNY sales personnel to ZimVie contracts by, among other things, contacting and pressuring the ZBNY personnel to change their decision and extending extraordinary compensation offers to the ZBNY

sales personnel to induce them to go to Medtronic.  All communications of this nature by the New York Representatives were in direct breach of the Termination Agreement.

165.    The sole purpose of Defendants' interference was to harm ZimVie's competitive position in the ZBNY sales territory by directing the sales personnel and their knowledge of ZimVie's proprietary information to a direct competitor.

166.    Upon information and belief, without the Defendants' interference the ZBNY sales personnel would have agreed to sign the contract with ZimVie to continue selling ZimVie products.

167.    As a result, ZimVie has suffered damages including but not limited to loss of customers, loss of goodwill, loss of profits, injury to its business reputation and market share, and damages associated with retaining other sales representatives and replacing sales representatives.

168.    ZimVie therefore requests that this Court:

    a.    Award damages against Defendants in an amount to be proved at trial;

    b.    Award punitive damages against Defendants;

    c.    Award ZimVie costs and interest; and

    d.    Grant such other and further relief as this Court deems equitable, just, and proper.

**EIGHTH CAUSE OF ACTION**
**Fraudulent Inducement**
**(ZBNY, Cosgrove, and Zuklie)**

169.    Plaintiffs incorporate the preceding paragraphs as though fully set forth at length herein.

170.    The ZBNY Defendants made a misrepresentation or omission of material facts when they failed to disclose their offers from Medtronic and intent to join Medtronic when

-38-

negotiating the Termination Agreement.

171.    This misrepresentation or omission of material fact was made with the purpose of inducing ZimVie's reliance.

172.    ZimVie justifiably relied on this misrepresentation or omission in entering into the Termination Agreement.

173.    As a direct and proximate result of this reliance, ZimVie has suffered and continues to suffer damages and irreparable harm and injury, including but not limited to loss of customers, loss of goodwill, loss of profits, injury to its business reputation and market share, and damages associated with retaining other sales representatives and replacing sales representatives.  ZimVie will continue to suffer such harm and injury if the ZBNY Defendants are not enjoined.

174.    ZimVie therefore requests that the Court:

    a.  Declare the Termination Agreement, including its release provisions, unenforceable and void;

    b.  Award ZimVie damages arising from the ZBNY Defendants' conduct;

    c.  Grant such other and further relief as this Court deems equitable, just, and appropriate.

## PRAYER FOR RELIEF

175.    Wherefore, ZimVie prays that the Court enter judgment in their favor and grant the following relief:

    a.  A preliminary injunction and permanent injunction to be issued under the claims for relief pled above that permit such relief, for one year from the issuance of the injunction:

        1.  Enjoining and restraining Defendants ZBNY, Cogrove, and Zuklie,

as well as their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's Order, from contacting, soliciting, attempting to contact or solicit, and/or doing business with any current employee, contractor, independent sales representatives, or customer of ZimVie or any entity that was an employee, contractor, or independent sales representatives within the year prior, or customer in the eighteen months prior, to Defendants ZBNY, Cogrove, and Zuklies' termination;

2. Enjoining and restraining Defendants, as well as their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's Order, from utilizing, disclosing or misusing in any way whatsoever any of ZimVie's internal customer, client, or product information or data;

3. Enjoining and restraining Defendants, as well as their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's Order, from disclosing any of ZimVie's confidential trade secrets to any party or third-party;

4. Enjoining and restraining Defendants, as well as their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's Order, from violating, or participating in the violation of, any of the terms of the obligations owed to Plaintiffs under the SRA and Termination Agreement and by virtue of Defendant ZBNY, Cosgrove, and Zuklie's obligations

to Plaintiffs in respect of the use and disclosure of Plaintiffs' trade secrets and proprietary information including in connection with the solicitation and servicing of Plaintiffs' customers;

5. Defendants shall cancel all pending orders where they have utilized ZimVie's confidential trade secrets, including but not limited to, customers and territory information;

b. Award damages against Defendants in an amount to be proven at trial;

c. Award ZimVie attorneys' fees, costs and interest; and

d. Grant such other and further relief as this Court deems equitable, just, and appropriate.

Dated: New York, NY
       August 18, 2023

CLARICK GUERON REISBAUM, LLP

By: _/s/ Isaac B. Zaur_
     Isaac B. Zaur
     220 Fifth Avenue, 14th Floor
     New York, NY 10001
     Tel: (212) 633-4310
     Fax: (646) 478-9484
     Izaur@cgr-law.com

     DAVIS GRAHAM & STUBBS LLP
     Tess Hand-Bender (*Pro Hac Pending*)
     Sarah Barr (*Pro Hac Pending*)
     1550 17th Street
     Suite 500
     Denver, CO  80202
     Telephone:  303.892.9400
     Facsimile:  303.893.1379
     tess.hand-bender@dgslaw.com
     sarah.barr@dgslaw.com